NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2253
_____

LEWIS HUGHES,
                                        Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court Civil No. 2-14-cv-00027)
District Judge:  Honorable Gustave Diamond

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2015

BEFORE:  AMBRO, HARDIMAN, and NYGAARD, *Circuit Judges*


(Filed: January 20, 2016)
_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lewis Hughes appeals from the District Court's order affirming the Commissioner of Social Security's decision to deny him disability benefits under the Social Security Act. We will affirm.

I.

Inasmuch as this opinion lacks any precedential value, we write solely to explain our reasoning to the parties. Therefore, we will set forth only those facts that are necessary to explicate our decision.

Hughes protectively filed for Social Security Disability Insurance benefits and Supplemental Security Income in May of 2008, alleging he became disabled due to health conditions that began in March of 2007. His applications were denied and Hughes then requested a hearing before an Administrative Law Judge. He received such a hearing and, in January of 2010, the ALJ found Hughes not to be disabled. The Appeals Council denied Hughes' request for review. Hughes then sought judicial review in the District Court, which remanded the matter for further development of the record.

On remand, a different ALJ held another hearing at which Hughes testified and was represented by counsel. In January 2013, the ALJ again found Hughes not to be disabled. The ALJ filed a thorough written decision in which he determined that Hughes' residual functional capacity (RFC) did not prevent him from performing work existing in significant numbers in the national economy. The Appeals Council again denied Hughes' request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Hughes sought judicial review in the District

Court, which affirmed, finding that substantial evidence supported the ALJ's findings and conclusions. Hughes then filed this appeal.[1]

## II.

## A.

Hughes raises three issues on appeal. He first argues that, on remand, the ALJ erred by not following the instructions of the District Court and Appeals Council. Hughes' argument is as conclusory as it is unconvincing. Hughes' brief does not identify what instructions the ALJ failed to follow on remand, nor does he point to any specific errors of law or fact arising from any omission. Citing our decision in *Thomas v. Commissioner*, 625 F.3d 798, 800-01 (3d Cir. 2010), the District Court instructed that, "[o]n remand, the ALJ shall fully develop the record [for the entire period of disability under consideration] and explain [his or her] findings . . . to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization." That was certainly accomplished here. Upon remand, a different ALJ held two hearings and issued a thorough decision. Hughes again appealed this decision to the Appeals Council, which noted and rejected his argument that the ALJ did not consider on remand his Global Assessment of Functioning scores, or his suicide attempts, among other things.

---

[1] The District Court had jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). We have jurisdiction under 28 U.S.C. § 1291. While our review of the Commissioner's legal determinations is plenary, we review her factual findings for "substantial evidence." 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Thus, we must uphold any fact found by the Commissioner as conclusive if supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Hughes has not offered any specifics as to how the ALJ failed to follow the instructions of the District Court and Appellate Council on remand and we reject this conclusory argument.

Next, and with more specificity, Hughes maintains that the ALJ did not properly evaluate other various reports in the record. This is simply not the case. For example, Hughes' claim that the ALJ failed to consider a 2008 intake assessment from Chestnut Ridge Counseling Services is disproved by the record. The ALJ's decision specifically notes the Chestnut Ridge report, citing to it as "Exhibit 12F." App. at 70. Hughes also argues that the ALJ failed to consider the psychiatric evaluation of Dr. Marjorie Tavoularis. However, the ALJ's decision indicates its review of Dr. Tavoularis' report. Not only did the ALJ, on remand, incorporate by reference the previous ALJ's discussion of Dr. Tavoularis' evaluation, but the second ALJ referenced the assessment directly. App. at 76 (citing to Exhibit 6F). Likewise, Hughes' claim that the succeeding ALJ did not consider the reports of Dr. Prabir Mullick is baseless because the ALJ distinctly referred to these treatment reports in his decision. App. at 64. The same goes for Hughes' claim that the ALJ failed to take into consideration Dr. Edyie Moses-Kolko's treatment notes. The ALJ's decision includes a detailed discussion of these notes, with citations to the corresponding exhibits in the record. App. at 65-67 (citing Exhibit 19F).

Hughes makes reference to the GAF scores he received from different professionals at various times during treatment, implying there is an appealable issue here. Yet, he makes no direct argument that the ALJ failed to take these scores into consideration. And, if he had, such an argument would be meritless for two reasons.

4

First, the ALJ did, in fact, consider Hughes' GAF scores, noting, for example, that "[h]e had a GAF rating of 49 as of October 2009, which increased to 55 as of . . . December 2009 . . .." App. at 64. Second, the ALJ's review of the medical evidence on remand incorporated by reference the decision of the prior ALJ, which likewise discussed Hughes' GAF scores.[2]

B.

Hughes also argues that the ALJ failed to note adequate reasons for discounting the opinion of Lindsey Groves; an opinion that, had it been adopted, would have found Hughes to be disabled. We disagree: the ALJ provided valid reasons for discounting Groves' opinion. As the District Court correctly noted, Groves was not a treating medical source. Therefore, her opinion was not entitled to the controlling weight that is typically given to a treating source's opinion. Based on a single examination, Groves submitted a fill-in-the-blank form that was unaccompanied by any annotations, notes, or explanations, and that relied on Hughes' own reports of symptoms and treatment as opposed to the entire treatment record. Also, the ALJ appropriately discounted Groves' diagnosis of cognitive disorder because that diagnosis was also unsupported by the treatment record. As set out in the ALJ's opinion, neither of Hughes' treating mental health professionals diagnosed Hughes with a cognitive disorder caused by a coma. App.

---

[2] We note that the latest edition of the *Diagnostic and Statistical Manual of Mental Disorders*, DSM–5, abandoned the GAF scale as a measurement tool. Because of this, the Social Security Administration now permits ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; but instructed that a "GAF score is never dispositive of impairment severity," and an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM–13066 at 5 (July 13, 2013).

5

at 71. We note that while Groves diagnosed Hughes as agoraphobic, the record evidence established that Hughes could function outside the home, even though he had anxiety in social situations. App. at 71. Given all of the above, the ALJ did not err by concluding that Groves' opinion was not fully supported by the weight of substantial evidence and as such is not entitled to controlling weight on the issue of disability.[3]

### C.

Lastly, Hughes argues that the ALJ's hypothetical question to the vocational expert was flawed because it did not sufficiently include all of his limitations. We reject this argument as well. We have instructed that an "ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original). An ALJ does not have "to submit to the vocational expert every impairment *alleged* by a claimant," however. *Id*. (emphasis in original). That is, an ALJ's hypothetical must convey only those limitations that have been credibly established to the vocational expert. *Id*. Here, the ALJ determined that Hughes has some credible limitations—chronic back pain, bipolar disorder, panic disorder, and borderline personality disorder—and framed his hypothetical question accordingly. The ALJ asked if jobs were available for an individual limited to "light work" in a "low stress, stabile [sic] work environment"

---

[3] To the extent that Hughes believes the District Court ordered the ALJ to accept Groves' opinion on remand, he is mistaken. The District Court remanded because it found the first ALJ's decision lacked sufficient support and relied on improper reasons in rejecting Groves' report. But, it did not order that a subsequent ALJ accept Groves' conclusions. As we have noted, the ALJ's decision at issue here contained many legitimate reasons for discounting Groves' opinion.

6

requiring "no more than minimal contact with the public and co-workers." App. at 299. Hughes argues that the question should have incorporated his inability to interact with supervisors and coworkers in any fashion, as well as his inability to stay on task, use proper judgment, and control his emotions. Hughes, however, did not credibly establish these limitations. Therefore, we agree with the District Court that the ALJ incorporated into his hypothetical only those limitations that were clearly established. Because the ALJ relied on a hypothetical to the vocational expert that included all of the limitations found credible in the RFC analysis, we see no error in the ALJ's conclusion that work exists in the national economy that Hughes can perform.

IV.

For the reasons set forth above, we will affirm the District Court's judgment upholding the Commissioner's determination of no disability.